FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
2/2/2021 4:40 PM
CLERK OF THE COURT
Blair Sandoval

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

KEVIN TORGERSON,

    **Plaintiff,**

vs.                                       Case No: D-202-CV-2021-00767

CHRISTOPHER STARR,

    **Defendant.**

## COMPLAINT

Plaintiff Kevin Torgerson ("Plaintiff"), by and through his attorneys, Gorence & Oliveros (Robert Gorence), Bowles Law Firm (Jason Bowles) and the Law Office of Todd J. Bullion (Todd J. Bullion), hereby submits this Complaint for personal injury and violation of his constitutional rights against Christopher Starr and states the following:

### JURISDICTION AND VENUE

1. Jurisdiction is proper in New Mexico as all facts giving rise to Plaintiff's claims occurred in New Mexico and the Defendant resides in New Mexico.

2. All acts involved in this case occurred in Bernalillo County, New Mexico.

3. Venue is proper in this Court pursuant to NMSA 1978 § 38-3-1.

### PARTIES

4. Plaintiff Kevin Torgerson is a resident of the State of Arizona, Navajo County.

5. Defendant Christopher Starr is a full time, sworn, salaried deputy employed by the Bernalillo County Sheriff's Office (BCSO). Upon information and belief, he is a resident of the State of New Mexico, Bernalillo County.

### STATEMENT OF FACTS

6. On March 3, 2020, Plaintiff was walking on the side of the road in a rural area.

1

Exhibit A

7. According to police reports authored by BCSO deputies, one or more 911 calls were made regarding a person who was walking in the median of Interstate 40 ("I-40") heading westbound. The BCSO police reports describe this person as being "suspicious." There were no indicia on any of these calls that Plaintiff had committed an arrestable offense under New Mexico law.

8. At least one BCSO deputy was dispatched to look for this suspicious person.

9. While looking for the suspicious person, Deputy Matthew Volk encountered a red four door sedan that was crashed on the side of the road.

10. Deputy Volk made contact with Plaintiff on the side of the road on I-40. He believed that Plaintiff may have been the suspicious person described by civilian callers to dispatch.

11. After a brief interaction with Deputy Volk, Plaintiff walked away from Deputy Volk and leapt over a fence. At this time, Deputy Volk observed that Plaintiff had a handgun on his person.

12. The handgun is a six-shot revolver with a barrel length of approximately 1 inch.

13. Deputy Cameron Carroll noted in his report that Deputy Volk stated in an interview with BCSO deputies that Plaintiff never pointed the gun at him or ever brought the gun up to where Deputy Volk feared for his life.

14. Following the interaction with Deputy Volk, multiple BCSO deputies descended on Plaintiff and held him at gunpoint for over half an hour.

15. During this time, Plaintiff had his gun in his waistband behind his back.

16. While holding Plaintiff at gunpoint, Deputies provided Plaintiff with a bottle of water and requested that he surrender.

17. Several deputies were behind cover with guns drawn and trained on the Plaintiff while conversing with Plaintiff.

18. Multiple deputies, including Defendant Starr, and three New Mexico State Police Officers, were significantly further away from Plaintiff. Defendant Starr and at least one New Mexico State Police Officer had rifles drawn and were also holding Plaintiff at gunpoint.

2

Exhibit A

19. Defendant Starr was roughly twenty-five to thirty yards away from the Plaintiff.

20. As Defendant Starr observed Plaintiff, he resolved that he would shoot Plaintiff if Plaintiff reached for the gun in his waistband and rotated the selector switch on his rifle off of the safe setting.

21. Plaintiff placed both of his hands on his head as deputies were speaking to him. As Plaintiff lowered his hands from his head Defendant Starr fired one round at Plaintiff which incapacitated Plaintiff. The round struck Plaintiff center mass causing him profound pain and life-threatening personal injury.

22. An indeterminate amount of time after the first shot was fired, Defendant Starr fired a second round which also struck Plaintiff causing him extreme pain and life-threatening personal injury.

23. Defendant Starr did not provide a warning to Plaintiff that he would fire before either shot.

24. Defendant Starr claimed in an interview with the BCSO Deputy who conducted the officer involved shooting investigation that he was concerned that Plaintiff was readying himself for armed conflict with the other Deputies and was concerned for their safety and that this concern is the reason he fired.

25. The actions of the other law enforcement officers present at the time the shots were fired plainly demonstrate that they were not in imminent danger of being harmed by Plaintiff immediately before Defendant Starr fired his weapon. While multiple deputies had guns drawn, the only deputy to fire was Defendant Starr who was at a much greater distance from Plaintiff than the deputies who did not fire their weapons.

26. A police report prepared by Deputy Cameron Carroll notes that both Deputy Micah Baker's audio recording and Deputy Heredia's audio recording reflect that Deputy Heredia is talking to Plaintiff and stops mid-word as two shots are heard on the tape.

Exhibit A

27. Deputy Heredia states in her interview with Deputy Cameron that Plaintiff had not taken the gun out of his waistband before shots were fired. She further states that some Deputy had retrieved the gun from Plaintiff, but she did not know which Deputy had done so.

28. In Deputy Carroll's report he notes that Deputy Barker retrieved the gun from Plaintiff after Plaintiff was shot.

29. Before Defendant Starr's first shot was fired, Plaintiff was not holding his gun.

30. Plaintiff was not holding his gun before the second shot was fired by Defendant Starr.

31. After he was shot, a Deputy removed Plaintiff's gun from his waistband.

32. As a result of the Defendant's actions, Plaintiff has suffered damages, including severe personal injury, emotional distress and mental anguish.

33. The Defendant's conduct was objectively unreasonable, as well as intentional, willful, wanton, obdurate, malicious, recklessly indifferent and in gross and reckless disregard of Plaintiff's rights as to warrant punitive damages.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Violation of the Fourth and Fourteenth Amendments**
**(Unreasonable Seizure and Excessive Force)**

34. Plaintiff incorporates and reasserts the allegations as set forth in the foregoing paragraphs as though fully stated herein.

35. Plaintiff is a United States citizen and Defendant Starr is a person for purposes of 42 U.S.C. § 1983.

36. At all relevant times Starr acted under color of state law in his capacity as a BCSO Deputy, and the actions and omissions complained of here were within the scope of his official duties or employment.

37. At all relevant times Plaintiff had clearly established constitutional rights under the Fourth Amendment to be free from unreasonable search and seizure and excessive force by law enforcement.

4

Exhibit A

38. Any reasonable police officer would know of the above rights.

39. Defendant Starr's actions and use of force were objectively unreasonable considering the facts and circumstances and thus violated Plaintiff's rights.

40. Defendant Starr's actions were also malicious or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights so that his actions shock the conscience.

41. The wrongful actions complained of here violated Plaintiff's constitutional rights causing serious bodily injury and could have caused Plaintiff's death.

42. At the time Plaintiff was shot, he was not under suspicion for committing any felony crime. The primary charge listed against Plaintiff in the reports prepared by BCSO in their officer involved shooting investigation is that Plaintiff is a "suspicious person." New Mexico has not made being a suspicious person a crime.

43. The facts and circumstances known to law enforcement did not justify holding him at gunpoint for half an hour prior to shooting him. Even before Plaintiff was shot, he was unreasonably seized under the Fourth and Fourteenth Amendments – the personal injury he subsequently suffered was a foreseeable result of the prolonged seizure with multiple deputies keeping guns trained on him.

44. The use of deadly force was not reasonable under the circumstances and was excessive under the Fourth and Fourteenth Amendments.

45. As a proximate result of Defendant Starr's conduct, Plaintiff suffered actual physical and emotional injuries and other damages and losses entitling him to compensatory and special damages in an amount to be determined at trial.

46. Plaintiff may also suffer lost future earnings and impaired earnings capacity as a result of his injuries, in an amount to be ascertained at trial.

47. Plaintiff is further entitled to attorneys' fees, costs, and pre-judgment interest.

Exhibit A

48. Plaintiff is also entitled to punitive damages against Defendant Starr as his wrongful actions were undertaken in malicious or willful or reckless or wanton disregard for Plaintiff's constitutional rights.

49. Defendant Starr's actions were undertaken within the scope of his duty or employment such as to make Bernalillo County liable under NMSA 1987, § 41-4-4 to pay any judgment entered against him.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Violation of the Fourth and Fourteenth Amendments
### (Failure to Warn Before Using Deadly Force)

50. Plaintiff incorporates and reasserts the allegations as set forth in the foregoing paragraphs as though fully stated herein.

51. Pursuant to the Fourth and Fourteenth Amendment right to be free from unreasonable seizure and excessive force, Defendant Starr was under a duty to warn Plaintiff that he would utilize lethal force if the situation feasibly allowed a warning to be given.

52. The BCSO deputies had held Plaintiff at gunpoint for roughly a half hour. Deputies were in cover and were not in imminent danger of suffering death or great bodily harm in the moments leading up to Defendant Starr firing his gun.

53. Defendant Starr stated in his interview with Deputy Carroll that he had disabled his rifle's safety and resolved to shoot Plaintiff if Plaintiff made a move for his gun. Defendant Starr did not vocalize this resolution to Plaintiff in a warning – and the circumstances reasonably would have allowed Defendant Starr to give a warning to Plaintiff.

54. The Deputies speaking to Plaintiff did not act in a way that demonstrates that any of them were under an imminent threat of death or great bodily harm – Deputy Heredia was talking to the Plaintiff and stopped mid-word as he was shot.

55. Any reasonable police officer would know of the above rights.

56. Defendant Starr's actions and use of force were objectively unreasonable considering the facts and circumstances and thus violated Plaintiff's rights.

Exhibit A

57.     Defendant Starr's actions were also malicious or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights so that his actions shock the conscience.

58.     The wrongful actions complained of here violated Plaintiff's constitutional rights causing serious bodily injury and could have caused Plaintiff's death.

59.     As a proximate result of Defendant Starr's conduct, Plaintiff suffered actual physical and emotional injuries and other damages and losses entitling him to compensatory and special damages in an amount to be determined at trial.

60.     Plaintiff may also suffer lost future earnings and impaired earnings capacity as a result of his injuries, in an amount to be ascertained at trial.

61.     Plaintiff is further entitled to attorneys' fees, costs, and pre-judgment interest.

62.     Plaintiff is also entitled to punitive damages against Defendant Starr as his wrongful actions were undertaken in malicious or willful or reckless or wanton disregard for Plaintiff's constitutional rights.

63.     Defendant Starr's actions were undertaken within the scope of his duty or employment such as to make Bernalillo County liable under NMSA 1987, § 41-4-4 to pay any judgment entered against him.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Violation of the Fourth and Fourteenth Amendments
### (Use of Force on Subdued Person)

64.     Plaintiff incorporates and reasserts the allegations as set forth in the foregoing paragraphs as though fully stated herein.

65.     Pursuant to the Fourth and Fourteenth Amendment rights to be free from unreasonable seizure and excessive force, Defendant Starr was under a duty not use force on Plaintiff after he had become subdued.

66.     Defendant's first center mass shot effectively subdued Plaintiff.

7

Exhibit A

67. At the time Defendant fired his second shot, the Plaintiff was incapable of causing harm to anyone. Defendant fired again anyway, striking Plaintiff center of mass again and causing additional life-threatening injuries to Plaintiff.

68. Any reasonable police officer would know of the above rights.

69. Defendant Starr's actions and use of force were objectively unreasonable considering the facts and circumstances and thus violated Plaintiff's rights.

70. Defendant Starr's actions were also malicious or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights so that his actions shock the conscience.

71. The wrongful actions complained of here violated Plaintiff's constitutional rights causing serious bodily injury and could have caused Plaintiff's death.

72. As a proximate result of Defendant Starr's conduct, Plaintiff suffered actual physical and emotional injuries and other damages and losses entitling him to compensatory and special damages in an amount to be determined at trial.

73. Plaintiff may also suffer lost future earnings and impaired earnings capacity as a result of his injuries, in an amount to be ascertained at trial.

74. Plaintiff is further entitled to attorneys' fees, costs, and pre-judgment interest.

75. Plaintiff is also entitled to punitive damages against Defendant Starr as his wrongful actions were undertaken in malicious or willful or reckless or wanton disregard for Plaintiff's constitutional rights.

76. Defendant Starr's actions were undertaken within the scope of his duty or employment such as to make Bernalillo County liable under NMSA 1978, § 41-4-4 to pay any judgment entered against him.

**FOURTH CLAIM FOR RELIEF**
**Claims under the New Mexico Tort Claims Act NMSA 1978 § 41-4-12**

77. Plaintiff incorporates and reasserts the allegations as set forth in the foregoing paragraphs as though fully stated herein.

78. Deputy Starr is a law enforcement officer as described in the New Mexico Tort Claims Act.

79. As alleged herein, Deputy Starr battered the Plaintiff by shooting him twice.

80. At all relevant times, Plaintiff found the Defendant's conduct offensive to his person and dignity. At no time did Plaintiff consent to any of the Defendant's actions.

81. As a proximate result of the Defendant's actions, Plaintiff suffered actual physical and emotional injuries and other damages and losses that entitle him to compensatory and special damages in an amount to be determined at trial.

82. Plaintiff's medical bills related to the shooting injury are also compensable as damages as allowed by the New Mexico Tort Claims Act, Plaintiff seeks compensation for those medical bills.

83. Defendant Starr's actions were undertaken within the scope of his duty or employment such as to make Bernalillo County liable under NMSA 1987, § 41-4-4 to pay any judgment entered against him.

84. Defendant Starr, BCSO, and Bernalillo County were on actual notice that a claim may be brought against them and that litigation may occur because of Defendant Starr's actions. An officer involved shooting investigation was conducted by BCSO deputies where they gathered witness statements, investigated the facts and circumstances that led up to Plaintiff being shot, photographed the location where the shooting occurred, and identified and collected evidence including Defendant Starr's shell casings and firearm and Plaintiff's firearm.

85. Defendant Starr's actions were undertaken within the scope of his duty or employment such as to make Bernalillo County liable under NMSA 1978, § 41-4-4 to pay any judgment entered against him.

**JURY DEMAND**

86. Plaintiff demands a jury trial on all issues so triable.

Exhibit A

## REQUEST FOR RELIEF

Wherefore, Plaintiff requests prays for the following relief:

1. Award compensatory damages in an amount to be determined at trial;

2. Award Plaintiff his attorneys' fees and costs as allowed by the respective statutes his claims are brought under;

3. Award punitive damages in an amount to be determined at trial.

4. Grant such other relief as the Court deems just and proper.

Respectfully submitted

*/s/ Robert Gorence*
Robert Gorence
Gorence & Oliveros
300 Central Ave SW
Suite #1000E
Albuquerque, NM  87102
(505) 244-0214
gorence@golaw.us

---and---

*/s/ Jason Bowles*
Jason Bowles
Bowles Law Firm
P.O. Box 25186
Albuquerque, NM 87125-0186
(505) 217-2680
jason@bowles-lawfirm.com

---and---

*/s/ Todd J. Bullion*
Todd J. Bullion
300 Central Ave SW
Suite #1000E
Albuquerque, NM  87102
(505) 452-7674
toddjbullion@gmail.com

Exhibit A